**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **PLAINTIFF** |
| vs. | **CRIMINAL ACTION NO. 3:96-CR-055-CRS** |
| **GREGORY GOUGH** | **DEFENDANT** |

### MEMORANDUM OPINION

This matter is before the Court on the *pro se* motion of the Defendant, Gregory Gough ("Gough"), for a modification of his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to "extraordinary and compelling reasons." DN 179 at 4-5. On August 26, 2020, Gough submitted a request asking Angela M. Owens, the warden at the Federal Correctional Institution ("FCI") Memphis, to file a motion for compassionate release on his behalf. DN 179 at 3, 15-16, 184 at 4. Gough's request was denied on October 7, 2020, because he "did not attempt an informal resolution." DN 179-1 at 2.

Shortly thereafter, Gough submitted an Attempt at Informal Resolution Form to his assigned correctional counselor. DN 179-1 at 1. The record indicates that the health concerns outlined in his Informal Resolution Form were addressed, but not his request for compassionate release. DN 179-1 at 3. As a result, Gough filed a request for administrative review asking Warden Owens to respond directly to his request for compassionate release. DN 179-1 at 3. Warden Owens did not respond. DN 179 at 3, 184 at 4. Gough then filed the instant motion for compassionate release and requested appointment of counsel. DN 179. The United States responded and objected to Gough's motion on the merits. DN 184. Gough subsequently filed a reply. DN 185. The matter is now ripe for review.

# I. BACKGROUND

During 1994 and 1995, Gough, who was forty-three years old at the time, committed numerous armed bank robberies in the Louisville, Kentucky area. DN 90 at 6-10. Gough was later arrested and charged with nine counts of bank robbery (Counts 1, 4, 7, 10, 13, 16, 19, 22, and 25), nine counts of violating 18 U.S.C. § 2113(d) for using a firearm during a bank robbery (Counts 2, 5, 8, 11, 14, 17, 20, 23, and 26), and nine counts of violating 18 U.S.C. § 924(c) for using a firearm during a crime of violence (Counts 3, 6, 9, 12, 15, 18, 21, 24, and 27). DN 90 at 5-6, 93 at 1. Gough pleaded not guilty to the charges, but a jury found him guilty on all counts. DN 90 at 6, 10.

In May 1997, Judge Edward Johnstone sentenced Gough to 87 months imprisonment for the substantive bank robberies charges,[1] 60 months imprisonment for one of the § 924(c) charges and 240 months for each of the other § 924(c) charges (8 additional counts). DN 93 at 2. The prison terms imposed as to § 924(c) counts were ordered to be served consecutively, each to the other and consecutively to the 87-month aggregate term of imprisonment imposed as to the other substantive counts, for a total term of imprisonment of 2,067 months. DN 93 at 2. Gough appealed his sentence. The Sixth Circuit affirmed. *See United States v. Gough,* 173 F.3d 857 (6th Cir. 1999). Gough then moved to vacate his sentence pursuant to 28 U.S.C. § 2255, but he his petition was denied. DN 111, 112, 125.

In 2006, Gough sought to modify his sentence pursuant to 18 U.S.C. § 3582(c)(2) based on the United States Sentencing Commission's adoption of Amendment 599.[2] DN 134. Judge Johnstone denied Gough's motion after finding that he "would not have benefited from application

---

[1] In imposing Gough's sentence, Judge Johnstone merged Counts 1, 4, 7, 10, 13, 16, 19, 22, and 25, of the Superseding Indictment, which represents the nine counts of bank robbery, into Counts 2, 5, 8, 11, 14, 17, 20, 23, and 26, which represents the nine counts of violating 18 U.S.C. § 2113(d) for using a firearm during a bank robbery. DN 93 at 2.
[2] Amendment 599 provided for certain changes to the commentary for U.S.S.G. § 2K2.4 and clarified under what circumstances defendants sentenced for violating 18 U.S.C. § 924(c) in conjunction with convictions for other offenses may receive weapon enhancements. *See United States v. Rice,* 38 F. App'x 267, 268 (6th Cir. 2002).

of Amendment 599." DN 137 at 5. Gough appealed and the Sixth Circuit affirmed the district court ruling. DN 139, 144. Gough moved to modify his sentence on the same grounds three years later, but Judge Johnstone denied the motion, noting that Gough's request was "without merit" and "duplicative of arguments presented and rejected repeatedly over the past decade." DN 155, 158 at 1.

In 2016, Gough filed another motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. DN 172. Judge Joseph McKinley Jr. denied his motion because the Sixth Circuit rejected Gough's request for authorization to file a second § 2255 motion. DN 178.

Based upon the enactment of the First Step Act, Gough seeks compassionate release, filing this request directly with the Court, as permitted by the Act. DN 179.

## II. ANALYSIS

### A. Request for Appointment of Counsel

Gough's motion for compassionate release requests appointment of counsel. DN 179 at 6. The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all "critical stages" of the criminal process. *See United States v. Wade*, 388 U.S. 218, 224 (1967) ("our cases have construed the Sixth Amendment guarantee to apply to 'critical' stages of the proceedings"). However, this constitutional right does not extend to motions for post-conviction relief. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("the right to appointed counsel extends to the first appeal of right, and no further"); *Shedwick v. Warden N. Cent. Corr. Inst.*, No. 16-3203, 2016 WL 11005052, at *3 (6th Cir. Dec. 30, 2016) ("[T]here is no right to counsel in a post-conviction action").

The decision to appoint counsel is within the discretion of the district court. *See United States v. Woodley*, No. 3:15-CR-143, 2020 WL 4194846, at *2 (E.D. Tenn. July 21, 2020) ("A district court has discretion, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require"). In determining whether, to appoint counsel, a court considers several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993).

Here, the Court finds that the appointment of counsel is unnecessary. Gough's motion for compassionate release is not complex and he articulately and adequately presents his claim. Further, he fails to identify any reasons why the interests of justice or due process justify his request.

Accordingly, Gough's request for the appointment of counsel will be denied.

### B. Compassionate Release

In evaluating a motion for compassionate release, a district court must engage in a three-step inquiry. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021). First, a court "must find that 'extraordinary and compelling reasons warrant such a reduction.'" *Id*. (citing 18 U.S.C. § 3582(c)(1)(A)). Second, a court must "ensure that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id*. Third, a court must "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Id*.

If a defendant satisfies each of the three requirements, a district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A). Alternatively, if a district court determines that a defendant has failed to satisfy any of the three steps, it need not address the others before denying the motion. *See Elias*, 984 F.3d at 519; *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000, 1006 (6th Cir. 2020).

### 1. Exhaustion of Administrative Remedies

Prior to December 2018, motions for compassionate release could only be made by the Director of the Bureau of Prisons ("BOP"). However, the First Step Act, PL 115- 391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Thus, if the BOP does not file for compassionate release, a prisoner must satisfy a mandatory condition to move for such relief on their own behalf. *See United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though this exhaustion requirement does not implicate our subject-matter jurisdiction, it remains a mandatory condition").

Here, Gough suggests that he exhausted his administrative remedies because Warden Owens failed to respond to multiple requests for compassionate release. DN 179 at 3, 15-16, 179-1 at 1-3. The United States does not contest Gough's assertion and concedes that "this Court has jurisdiction to hear this matter." DN 184 at 4. We will therefore proceed to consider Gough's motion.

### 2. Extraordinary and Compelling Reasons

18 U.S.C. § 3582(c)(1)(A) permits a district court to reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). But the statute defines the phrase "extraordinary and compelling reasons."

Congress instructed the Sentencing Commission, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [to] describe what should be considered extraordinary and compelling reasons for sentence reductions, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission released its only policy statement related to compassionate release motions in 2006 and included an application note which provided that "[a] determination made by the Director of the Bureau of Prisons that a particular case warrants a reduction for extraordinary and compelling reasons shall be considered as such for purposes of subdivision (1)(A)." U.S.S.G. § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2006). Currently, the Commentary to U.S.S.G. § 1B1.3 describes four circumstances which constitute "extraordinary and compelling reasons" for a sentence reduction:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> (A) Medical Condition of the Defendant.—
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
> (I) suffering from a serious physical or medical condition,
> (I) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health

>because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
>(C) <u>Family Circumstances</u>.
>>(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>(D) <u>Other Reasons</u>.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2018).

After Congress passed the First Step Act in December 2018, there was an open question concerning whether § 1B1.13 was applicable to compassionate release motions brought directly by inmates, as the Guidelines suggest that § 1B1.13 only applies to motions brought by the BOP. *See Ruffin,* 978 F.3d at 1006-08. The United States Court of Appeals for the Sixth Circuit resolved the issue in *Jones* by holding that "the passage of the First Step Act render[s] § 1B1.13 inapplicable to cases where an imprisoned person files a motion for compassionate release."[3] *Jones*, 980 F.3d at 1109. As a result of this finding, the Sixth Circuit announced that "district courts have full discretion . . . to determine whether an extraordinary and compelling reason justifies compassionate release." *Id*.

Since *Jones*, the Sixth Circuit has reaffirmed its position that the policy statements in § 1B1.13 do not constrain district courts in considering requests properly filed by defendants for compassionate release under the First Step Act. *See e.g., Elias,* 984 F.3d at 519 ("we hold that §

---

[3] Similarly, the United States Court of Appeals for the Second, Fourth, Seventh, and Tenth Circuit, along with a host of district courts, have concluded that the Sentencing Commission's existing policy statement is applicable only to motions filed by the Director of the BOP, and not to motions filed directly by defendants. *See e.g., United States v. Brooker*, 976 F.3d 228, 236-37 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281-84 (4th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020); *United States v. Maumau*, 993 F.3d 821, 834-37 (10th Cir. 2021).

1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions"); *United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) ("§ 1B1.13 is not an applicable policy statement for defendant-filed motions for compassionate release"). Nonetheless, we note that we may turn to U.S.S.G. § 1B1.13 for "helpful guidance" in ascertaining whether extraordinary and compelling reasons exist that may warrant a sentence reduction. We acknowledge while so doing, however, that this Court is free to define "extraordinary and compelling reasons" on our own initiative. *See Elias,* 984 F.3d at 519–20 ("in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative").

Having clarified the basic analytical framework necessary for this Court to address claims for relief based upon "extraordinary and compelling reasons," we proceed to the merits of Gough's motion.

Gough argues that the First Step Act's changes to 18 U.S.C. § 924(c), as well as his current age and rehabilitation during incarceration, taken together, constitute extraordinary and compelling reasons for compassionate release. DN 179 at 5, 15-16, 179-1 at 1-3, 185 at 1-5.

Gough is now 69 years old and has served over 25 years of his sentence. His form Motion for Compassionate Release filed with this Court, has boxes checked that indicate "I am 65 years old or older and I am experiencing a serious deterioration in physical or mental health because of the aging process" and "There are other extraordinary and compelling reasons for my release." DN 179, p. 4. In explaining the basis of his request, he wrote that (1) he has been incarcerated 25 years, (2) he has no disciplinary infractions, (3) he has numerous educational certifications earned in prison, (4) he has maintained a good and consistent work ethic, (5) he does not pose a danger to the

community or staff, and (6) that his sentence would be much shorter if sentenced today since the First Step Act eliminated § 924(c)'s stacking provision. *Id.* at p. 5. Notably, there is no mention of serious deterioration in his physical or mental health. In fact, he stated in his Proposed Release Plan that he is "not seeking release due to medical issues." *Id.* at p. 9. He listed a number of commonly prescribed medications he takes and indicated that he does not require durable medical equipment or need assistance with self-care such as bathing, walking, or toileting. *Id.* He has provided no medical records with his motion.

The only mention of any health concern appears in his reply brief (DN 185) in which he stated "I am a 69 year old Afro-American living in a prison environment, if I were to contract the COVID-19 virus it could potentially cause me to become very sick or cause my death." DN 185, p. 1. He has not indicated whether he has chosen to be vaccinated against the coronavirus. Additionally, as of this writing, the Bureau of Prisons reports that FCI Memphis where Gough is serving his sentence has no positive cases of COVID-19 among the inmate population.[4] "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release…" *United States v. Elias*, 984 F.3d. 516, 521 (6th Cir. 2021), *citing United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Gough urges that his post-sentencing rehabilitation provides strong support for a finding that extraordinary and compelling reasons exist warranting his compassionate release. It appears that Gough has approached his term of imprisonment with optimism and a desire to transform his life. The record evidences that Gough completed several educational courses, earned numerous certificates from the Life Connections Program, and obtained other certificates for completing workshops such as Personal and Professional Development Seminar, Alternatives to Violence, and

---

[4] https://www.bop.gov/coronavirus/

Fathering from a Distance. DN 179 at 5, 15-16, 179-1 at 3, 179-2 at 2-21. Through the United States Probation Office for the Western District of Kentucky ("Probation"), the Court also learned that Gough has had steady employment since his incarceration began and eventually obtained the highest paying and most trusted position available through FCI Memphis' UNICOR job program.[5] He has received only one minor disciplinary citation during his twenty-five years of incarceration, which did not result in any loss of good time credit. Gough works with FCI Memphis' Chaplin to ensure that other prisoners who share his Islamic faith receive appropriate religious services and he serves as an informal mentor for newly arriving inmates who identify as Muslim. Moreover, Probation indicated that Gough was recently assessed as a "minimum risk of recidivism" by the BOP.

However compelling, post-sentencing rehabilitation alone cannot form the basis for compassionate release. *See United States v. Johnson,* No. 3:02-CR-00068-TBR, 2020 WL 6121162, at *3 (W.D. Ky. Oct. 16, 2020) (citing *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *8 (W.D. Tenn. June 8, 2020) ("although rehabilitation cannot, alone, justify a reduction in sentence, it is relevant to whether a reduction is warranted").

The primary focus of his motion, which is addressed at length in both the original motion and is reply, is the disparity in sentencing for violations of § 924(c) wrought by the so called "anti-stacking provision" of the First Step Act, § 403. The United States argues that the changes to § 924(c) cannot be considered in assessing whether "extraordinary and compelling reasons" exist for compassionate release because Congress did not make the § 403 amendments to § 924(c) retroactive. DN 184 at 5-11. In other words, since Congress did not directly permit previously

---

[5] The Court requested information from Probation about Gough's conduct, education, and employment during his incarceration, as well as his most recent BOP Risk Assessment score, to get a clear picture of his efforts at rehabilitation and his potential to recidivate considering that the United States' Response did not attach any exhibits corroborating their characterization of Gough's prison conduct. The electronic mail correspondence between the Court and representatives from Probation will be filed under seal contemporaneous with this Memorandum Opinion.

10

sentenced defendants the benefit of the amendments to § 924(c), the Court cannot do so indirectly through an "extraordinary and compelling reasons" analysis.

In addition to expanding access for prisoners to compassionate release, the First Step Act amended § 924(c) "to eliminate the 'stacking' of mandatory-minimum sentences for successive violations [of § 924(c)] charged in the same indictment." *United States v. Baker*, No. 10-20513, 2020 WL 4696594, at *1 (E.D. Mich. Aug. 13, 2020). Prior to the First Step Act, § 924(c)'s "stacking" provision required a district court to impose consecutive sentences of either twenty or twenty-five years imprisonment for second or subsequent convictions of the statute, even if those convictions occurred at the same time as a defendant's first conviction under the statute. *See United States v. Young*, 458 F. Supp. 3d 838, 846 (M.D. Tenn. 2020) (citing 18 U.S.C. § 924(c) (1996)) ("Whoever, during and in relation to any crime of violence . . ., uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . ., be sentenced to imprisonment for five years. . . . In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years").[6] Now, mandatory minimum sentences under § 924(c) can only be "stacked" if a defendant's first § 924(c) conviction is final at the time of the second or subsequent § 924(c) conviction. *See id.* ("an intervening conviction is now necessary to trigger the harsh second-conviction penalties").

Unlike other statutory amendments effectuated by the First Step Act, Congress declined to make the amendments to § 924(c) retroactive. Section 403(b) of the First Step Act states that "[t]his

---

[6] On November 13, 1998, President Bill Clinton signed into law the Criminal Use of Guns Act, commonly known as the "Bailey Fix." Criminal Use of Guns Act, Pub. L. No. 105–386, 112 Stat 3469 (1998). This legislation amended 18 U.S.C. § 924(c) to add new tiered sanctions for brandishing or discharging a firearm and increased the mandatory minimum for a second or subsequent conviction under the statute from twenty to twenty-five years imprisonment. *Id*.; *see also* Paul J. Hofer, et al., *Sentencing for the Possession or Use of Firearms During a Crime*, U.S. Sent'g Comm'n 1, 6-11 (Jan. 6, 2000), https://www.ussc.gov/sites/default/files/pdf/research/working-group-reports/firearms/20000106-use-firearms-during-crime/firearms.pdf.

11

section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act § 403(b), PL 115- 391, 132 Stat 5194 (Dec. 21, 2018) (codified as amended at 18 U.S.C. § 924). The Sixth Circuit has interpreted this subsection to permit defendants to benefit from § 403 if they were awaiting resentencing upon the First Step Act's enactment, but not to defendants whose cases were pending on direct appeal at the time of enactment. *See e.g., United States v. Henry*, 983 F.3d 214 (6th Cir. 2020); *United States v. Richardson*, 948 F.3d 733, 736 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 344 (2020).

In Gough's case, he was sentenced to 2,067 months imprisonment, 1,980 of which were based on § 924(c) violations. DN 93 at 2. Were he sentenced today, the United States suggests in a footnote, Gough could receive 540 or 756 months imprisonment, depending on whether he would be subject to five years for each § 924(c) charge or seven years each for brandishing a firearm. DN 184 at 11. Therefore, Gough's sentence is at least 102 years longer than that which Congress has now established as the adequate level of punishment for comparable conduct, resulting in a gross disparity between the sentence initially levied in May 1997 and the length of sentence that could be imposed if Gough were convicted of such conduct today.

Gough contends that the combination of factors—his noteworthy rehabilitation since incarceration, lack of serious disciplinary infractions, the incredible length of the mandatory-minimum sentence imposed, and the fact that, if sentenced today, he would receive a much shorter term of imprisonment—constitutes an "extraordinary and compelling reason" for compassionate release. This argument has now been foreclosed by the United States Court of Appeals for the Sixth Circuit with the issuance of its decision in *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021), *en banc reh'ing denied,* Sept. 8, 2021. *Jarvis* prevents this Court from exercising its discretion to

consider the impact of the anti-stacking provision, either alone or in combination with other factors, to find that Gough presents an "extraordinary and compelling reason" for compassionate release. *Jarvis* stated unequivocally that only when a defendant can show some extraordinary and compelling reason *other than* a non-retroactive sentencing reduction such as § 403 could this Court consider the anti-stacking provision at the *next* step of the evaluation, evaluation of the § 3553(a) factors. *See Jarvis, supra.* at 445. The Sixth Circuit reasoned, quoting its prior decision in *United States v. Tomes*, that "the sentence-reduction statute, § 3582(c)(1)(A), does not give district courts a license to 'end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms.'" *Jarvis*, 999 F.3d at 444.[7]

### III. CONCLUSION

In sum, Gough has asserted no age-related serious medical issues, the Court is foreclosed from considering the impact of the amendments to § 924(c), and rehabilitation alone cannot constitute an "extraordinary and compelling" reason for a sentence reduction under § 3582(c)(1)(A). Gough's motion thus fails at the first step in the compassionate release analysis.

---

[7] *Jarvis* stands juxtaposed to *United States v. Owens*, 996 F.3d 755 (6th Cir. 2021) issued prior to *Jarvis* by another panel of the Sixth Circuit. The *Owens* court found that the impact of the anti-stacking provision could be considered in conjunction with other grounds on a case-by-case basis in the Court's exercise of its discretion in assessing "extraordinary and compelling reasons" for sentence reduction. The *Jarvis* court took the panel that decided *Owens* to task for disregarding *Tomes'* prior statement on the issue in reaching its decision. *Jarvis* thus concluded that *Tomes* was binding authority and that *Owens* was thus improvidently decided. This Court stayed resolution of Gough's motion pending a decision on a motion for *en banc* review of *Jarvis*. The motion for *en banc* review was denied and we are compelled to follow *Jarvis'* mandate. *See also United States v. Beigali*, No. 07-20490, 2021 WL 3560889 (E.D.Mich. Aug. 12, 2021)("primary focus is on challenging his lengthy sentence." *Jarvis* forecloses this argument); *United States v. Corona*, No. 20-6309, 2021 WL 2345769 (E.D.Tenn. June 8, 2021)("We therefore decline, as we must, to follow *Owens* because *Tomes* was decided first and therefore controls." *See Jarvis*).

13

The Court will end its analysis here. *See Elias, supra.* at 519)(noting that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others").

Gough's motion for compassionate release and his request for appointment of counsel will be denied by separate order.

**IT IS SO ORDERED.**

October 7, 2021

Charles R. Simpson III, Senior Judge
United States District Court

cc:   Counsel of Record

   Gregory Gough, *pro se*
   Inmate #06013-033
   FCI Memphis
   P.O.Box 34550
   Memphis, TN 38184