UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                         PLAINTIFF

v.                                                    NO. 3:96-CR-55-CRS

GREGORY THOMAS GOUGH                                            DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the court for consideration of Defendant Gregory Thomas Gough's

second *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). DN 190.

In his first motion for compassionate release, Gough argued that the First Step Act's

changes to 18 U.S.C. § 924(c), his current age, and rehabilitation during incarceration, taken

together, constituted extraordinary and compelling reasons for compassionate release. (DN 179 at

5, 15-16, 179-1 at 1-3, 185 at 1-5). The motion was denied in a detailed and comprehensive opinion

(DN 187).

The present motion seeks compassionate release on the ground that his medical condition

places him at risk of serious illness or death should he contract the Delta variant of the COVID-19

virus.  Gough notes that we indicated in our earlier opinion that "Gough has asserted no age-related

serious medical issues."  We stated:

> The only mention of any health concern appears in his reply brief (DN 185) in
> which he stated "I am a 69 year old Afro-American living in a prison environment,
> if I were to contract the COVID-19 virus it could potentially cause me to become
> very sick or cause my death."  DN 185, p. 1.  He has not indicated whether he has
> chosen to be vaccinated against the coronavirus.  Additionally, as of this writing,
> the Bureau of Prisons reports that FCI Memphis where Gough is serving his

> sentence has no positive cases of COVID-19 among the inmate population [citing to https://www.bop.gov/coronavirus/]. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release…" *United States v. Elias*, 984 F.3d. 516, 521 (6th Cir. 2021), *citing United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

DN 187, p. 9. Now, Gough seeks to articulate an "age-related serious medical issue" and again seeks compassionate release. Thus, this motion could be considered an attempt at a motion for reconsideration. As such, the motion is untimely. The motion was filed sixty-nine days after the Court denied his initial motion. A motion for reconsideration must be filed within fourteen days from the date of entry of the Court's order (see *United States v. Brown*, 817 F.3d 486, 488 (6th Cir. 2016). Gough's motion for reconsideration is untimely. This subsequent filing should be denied on that basis alone.

To the extent the present motion raises an entirely new ground for compassionate release, we note that the Sixth Circuit has not addressed whether the mandatory exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) includes issue exhaustion. In fact, it appears that there is a split of authority among the district courts in the circuit concerning this question. *See, United States v. Wardle*, No. 5:18-57-KKC, 2021 WL 4822827 (E.D.Ky. Oct. 14, 2021)(citing *United States v. Poole*, 472 F.Supp.3d 450, 456 (W.D.Tenn. 2020)(no language in statute requires that each ground for relief first be made to the BOP) and *United States v. Asmar*, 465 F.Supp.3d 716, 719 (E.D.Mich. 2020)(where the factual basis for the administrative request and the motion before the court are different, the defendant has failed to satisfy the exhaustion requirement)).

We find some appeal in the argument that "mandatory exhaustion" does not mean mandatory exhaustion if different and/or additional grounds or subsequent motions on different grounds need not be presented to the BOP before seeking federal court review. We agree that a

"take all comers" approach would "incentivize exactly the kind of 'line jumping' and 'charging straight to federal court' that administrative exhaustion is meant to prevent and removes the BOP from the important role it plays in evaluating prisoners' claims." *Wardle*, *supra.* at *3, quoting *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020).

Gough does not contend that he sought administrative review with the warden of a new petition for compassionate release either. He simply filed the motion in this Court. Again, under *Alam*, this is grounds for denial of the motion without further comment.

However, should the Court of Appeals determine that issue exhaustion is not required in the Sixth Circuit, we find no merit to Gough's new argument for compassionate release for the reasons stated below.

Gough states in his motion that

I am a 69 year old chronic care type II diabetic. I've tested positive with the covid-19 virus and been quarantined. I've been fully vaccinated, however, if I were to contract the more contagious delta virus, it could cause me to become very sick or cause my death. Three months ago my Dr. Gill put me on Ozempic injections once a week for my heart and kidney protection. All of the above issues are medical department documented, please see attached.

DN 190, p. 5.

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title

18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3, the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

**(A) Medical Condition of the Defendant.--**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)**  suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)**  experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)**  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

By its own terms, § 1B1.13 applies only "[u]pon motion of the Director of the Bureau of Prisons." This policy statement has not been updated to reflect that defendants may now move the court for compassionate release. The United States Court of Appeals for the Sixth Circuit recently found that "§ 1B1.13 is not an 'applicable policy statement' for *defendant-filed* motions for compassionate release," (*United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) *citing United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021), and thus it does not constrain the court's analysis of what constitutes extraordinary and compelling reasons for release. *Id*. We may turn to U.S.S.G. § 1B1.13, however, for "helpful guidance" in ascertaining whether extraordinary and compelling reasons exist in a given case that may warrant a sentence reduction. We acknowledge while so doing that this Court is free to define "extraordinary and compelling reasons" on our own initiative. *See Tomes*, 990 F.3d at 503; *Elias*, 984 F.3d at 519-520. However, the Court's exercise of that discretion is not without bounds.

> The mere fact that defining *extraordinary and compelling* "is left to the district court's discretion, with no heavy congressional thumb on either side of the scales, does not mean that no legal standard governs that discretion. ... '[A] motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles.' " *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005) (quoting *United States v. Burr*, 25 F. Cas. 30, 35 (C.C. Va. 1807) (Marshall, C.J.)); *accord Nken v. Holder*, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). For that reason, "limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike." *Martin*, 546 U.S. at 139, 126 S.Ct. 704. After all, " 'discretion' does not mean 'whim.' " *United States v. Keefer*, 832 F. App'x 359, 363 (6th Cir. 2020) (quoting *Martin*, 546 U.S. at 139, 126 S.Ct. 704); *accord Jones*, 980 F.3d at 1112. And in our system of laws, "discretion is rarely without limits." *Martin*, 546 U.S. at 139, 126 S.Ct. 704 (quoting *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 762, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989)). Here, the text of § 3582 limits a court's discretion.
>
> The statute sets a legal standard: It requires "extraordinary *and* compelling reasons" to modify a prisoner's already-final sentence. § 3582(c)(1)(A)(i) (emphasis added). So it is not as if Congress left sentence modifications entirely to the district courts' "discretion." Although the statute does not define "extraordinary and compelling," those words still have their "ordinary meaning at the time Congress enacted the statute." *See New Prime Inc. v. Oliveira*, —— U.S. ——, 139

S. Ct. 532, 539, 202 L.Ed.2d 536 (2019) (alterations omitted) (quoting *Wisconsin Central Ltd. v. United States*, ___ U.S. ___, 138 S. Ct. 2067, 2074, 201 L.Ed.2d 490 (2018)); *see also Kouichi Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566, 132 S.Ct. 1997, 182 L.Ed.2d 903 (2012). And when Congress enacted the statute in 1984, "extraordinary" was understood to mean "most unusual," "far from common," and "having little or no precedent." Webster's Third New International Dictionary: Unabridged 807 (1971). "Compelling" meant "forcing, impelling, driving." *Id.* at 463.

*United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021).

First, we note that on November 6, 2020 Gough was diagnosed with COVID-19 and subsequently recovered. He has also been fully vaccinated, having received the Pfizer-BioNTech vaccine on March 24, 2021 and April 13, 2021. He received a booster dose on November 26, 2021. As Gough's motion is based upon the risk that he will suffer serious illness or death from COVID-19, and, having contracted and recovered from the virus before being vaccinated, this basis for compassionate release is without merit. His fear that he would succumb to the virus if infected proved to be unfounded when he contracted COVID-19 at a time prior to the availability of vaccines. Now, having been vaccinated and boosted, Gough has done all he can to protect himself. It is highly unlikely that he would become seriously ill if he experienced a breakthrough case of the virus. According to the most recent statement by the CDC,[1]

> The Omicron variant[2] spreads more easily than the original virus that causes COVID-19 and the Delta variant. CDC expects that anyone with Omicron infection can spread the virus to others, even if they are vaccinated or don't have symptoms…[B]reakthrough infections in people who are vaccinated are likely to occur. People who are up to date with their COVID-19 vaccines and get COVID-19 are less likely to develop serious illness than those who are unvaccinated and get COVID-19.

---

[1] Omicron Variant: What You Need to Know | CDC
[2] While Gough expresses his concern about the Delta variant, the dominant and more infectious variant at this time is the Omicron variant of the virus. This analysis applies equally to potential infection by either variant.

The danger to Gough is thus significantly reduced by the fact that he contracted and recovered from COVID-19 in 2020 (*See United States v. Smith*, No. 10-20388, 2021 WL 3077879, *2 (E.D.Mich. July 21, 2021)(discussing development of antibodies in recovered COVID-19 patients and exposure to variant viruses)) and that he elected to receive the vaccine, including a booster, to protect himself from serious illness from potential reinfection (*See United States v. Reed*, 2021 WL 2681498, at *4 (E.D.Pa. June 30, 2021)("Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions [based on COVID-19] generally lack merit.").

Additionally, as of this writing, the Bureau of Prisons ("BOP") reports only 7 inmates positive for COVID-19 out of 1,077 inmates at FCI Memphis. The BOP also reports that 210 staff and 1,065 inmates have been vaccinated to date.[3]. While the coronavirus is far from eradicated, many thousands of inmates have been vaccinated, 297,835 in the federal prison system at last report, and many of the federal institutions have had success in bringing outbreaks of COVID-19 infections under control. *Id.* The dire and dangerous circumstances faced by our most vulnerable populations at the height of the pandemic are, we hope, behind us.

Even so, we cannot know with certainty what COVID-19 and its variants have in store for us. However, the Court must address each inmate's situation individually and in the current context. With respect to Gough's present motion for compassionate release, we find that there is no basis for a finding of extraordinary and compelling reasons which would warrant consideration of such relief. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release…" *United*

---

[3] https://www.bop.gov/coronavirus. (last visited February 22, 2022)

*States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021), *citing United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020), and the risks to this particular defendant are minimal, of the reasons already stated.

Further, Gough does not contend, nor could he, that his age and health conditions alone constitute an extraordinary and compelling reason for compassionate release.

The medical records provided by Gough indicate that he has no serious medical conditions that prevent him from providing self-care. He is not terminally ill or seriously debilitated in any way.

He affirmed on the form accompanying his medical records that he is currently prescribed medication in the facility where he is incarcerated, but he does not require a wheelchair, oxygen, prosthetic limbs or a hospital bed; he does not require assistance with self-care such as bathing, walking or toileting; and he does not require assisted living. DN 190-3, p. 4. Gough's medical records indicate that he is a chronic care Type II diabetic who is receiving consistent care for his medical condition at FCI Memphis. Gough noted that his physician has recently added Ozempic to his regimen of care for diabetes, the notes indicating that Gough "has high concern about heart risk," and that he has been counseled about self-care and compliance. DN 190-3, pp. 9, 12-13. Gough states in his motion that he receives Ozempic injections "for my heart and kidney protection." DN 190, p. 5. Gough's chronic condition is being consistently monitored and controlled with appropriate medications.

There is nothing about Gough's medical condition that meets any of the possible criteria for compassionate release due to medical infirmity. While he is over the age of 65, his diabetes, which is a chronic, well-managed condition, does not constitute an extraordinary and compelling reason for compassionate release.

In sum, we conclude that, presently, the Gough's risk of contracting COVID-19 and becoming seriously ill therefrom are substantially reduced due to (1) the likelihood that Gough has developed some level, albeit to an unknown degree, of naturally-induced immunity to the virus from his prior contraction of it, (2) protection from the Covid-19 vaccines he has received, (2) the prevalence of vaccinations among staff and inmates at FCI Memphis, and (3) the virtual elimination, to date, of COVID-19 cases in the facility.

As Gough's health concerns are bound up with the risk of contracting COVID-19 at FCI Memphis, the fact that the possibility of contracting the virus there is presently highly unlikely militates against a finding of an extraordinary and compelling reason for compassionate release. *See United States v. McIlveen*, No. 4:15-cr-00403, 2021 WL 2463847 (N.D.Ohio June 17, 2021) *citing United States v. Carr*, No. 20-5784, 2020 U.S. App. LEXIS 33773, at \*5 (6th Cir. Oct. 26, 2020) (citing "that the existence of Covid-19 and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release") (other citations and quotes omitted)).

As there are no extraordinary and compelling reasons for compassionate release in this case, we need not address additional arguments or supplemental materials as they might apply to an evaluation of the 18 U.S.C. §3553(a) factors or the issue of dangerousness under 18 U.S.C. § 4142(g). *See United States v. Elias*, 984 F.3d 516 (6th Cir. 2021)("[W]e clarify that, as in *Jones* and *Ruffin*, district courts may deny compassionate-release motions when *any of the three prerequisites* listed in § 3582(c)(1)(A) is lacking and do not need to address the others. *See Jones*, 980 F.3d at 1108 (emphasis added).

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the

second motion of the defendant, Gregory Thomas Gough, *pro se*, for compassionate release

(DNs 190) is **DENIED.**  The motion of the United States to file medical records under seal (DN

193) is **GRANTED.**

February 23, 2022

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc:       Counsel of Record
          Gregory Thomas Gough, *pro se*
          #06013-033
          FCI Memphis
          P.O. Box 34550
          Memphis, TN 38184